# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STEVEN J. RUSSELL and
NANCY J. RUSSELL,

      **Plaintiffs,**

      **v.**                                        **Case No. 19-CV-119**

SANTANDER CONSUMER USA, INC.,
ASSETSBIZ-WISCONSIN, LLC, and
MICHAEL A. SANCINATI,

      **Defendants.**

## DECISION AND ORDER ON DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

Steven and Nancy Russell bought a 2013 Dodge Journey from a dealership in Illinois. Santander Consumer USA, Inc. purchased the Russells' retail installment contract for the vehicle. After falling behind on their payments, Santander obtained a judgment of replevin and enlisted AssetsBiz-Wisconsin, LLC, and its repossession agent, Michael Sancinati, to repossess the Russells' vehicle. The Russells now sue AssetsBiz and Sancinati for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and sue all three defendants for violations of the Wisconsin Consumer Act ("WCA"), Wis. Stat. 421 *et seq.*, stemming from the repossession.

AssetsBiz and Sancinati move for summary judgment as to the FDCPA claim on the grounds that neither are "debt collectors" pursuant to the statute. They further move for summary judgment as to the WCA claims on the grounds that the Russells entered into their retail installment contract in Illinois and the WCA only applies to consumer

transactions made in Wisconsin. For the reasons explained below, AssetsBiz's and Sancinati's motion for summary judgment is denied as to the FDCPA claim. The parties will be granted leave to supplement their arguments as to the defendants' motion for summary judgment on the WCA claims.

## FACTS

Steven and Nancy Russell reside in Racine, Wisconsin. (Defs.' Proposed Findings of Fact ("DPFOF") ¶ 8, Docket # 32 and Pls.' Resp. to DPFOF ("Pls.' Resp.") ¶ 8, Docket # 36.) On September 5, 2016, the Russells entered into a retail installment contract with Antioch Chrysler, Dodge, and Jeep for the purchase and finance of a 2013 Dodge Journey, vehicle identification number 3C4PDDDG4DT607562 ("the vehicle"). (*Id.* ¶ 2.) The contract was executed in Antioch, Illinois. (*Id.* ¶ 3.) The contract was subsequently assigned to Santander. (*Id.* ¶ 4.)

The Russells fell behind on their payments (Compl. ¶ 21, Docket # 1), and on March 14, 2017, Santander sued the Russells in Racine County Circuit Court to recover possession of the 2013 Dodge Journey (DPFOF ¶ 1 and Pls.' Resp. ¶ 1). On March 17, 2017, Steven Russell accepted service of the summons and complaint in the Racine County action on his and his wife's behalf. (*Id.* ¶¶ 9–10.) The complaint in the Racine County action alleges that a written notice was mailed to the last known address of Steven and Nancy Russell, informing the Russells that they were in default and had a right to cure the default within fifteen days. (*Id.* ¶ 11.) The written notice gave the name, address, and telephone number of Santander and identified the retail installment contract and property upon which the debt was due. (*Id.*) The complaint in the Racine County action alleged that the Russells failed to timely cure the default for $1,509.49 on or before February 24, 2017 as required. (*Id.* ¶ 12.)

A hearing was held in the Racine County action on April 10, 2017 and a judgment of replevin was entered on April 20, 2017. (*Id.* ¶¶ 13–14.) The judgment of replevin stated that Santander was entitled to immediate possession of the vehicle. (*Id.* ¶ 15.) The judgment of replevin stated that Santander or its agents had the right to recover the vehicle from the Russells and that the sheriff may be used to recover the property and deliver it to Santander. (*Id.* ¶ 16.) In August 2017, the Russells and Santander entered into a modification and deferral of the consumer credit transaction. (Pls.' Proposed Additional Facts ¶ 31, Docket # 36.)

On October 14, 2018, Steven Russell was inside his house when he heard his vehicle's security alarm go off. (DPFOF ¶ 17 and Pls.' Resp. ¶ 17.) Steven's friend, Eric Peckman, came inside the house shortly thereafter and told Steven that someone was taking his vehicle. (*Id.*) Steven retrieved a handgun and stepped outside his house. (*Id.* ¶ 18.) After stepping outside of his house, Steven saw a man, who he later learned was Sancinati, attempting to repossess his vehicle. Steven informed Sancinati that he had a gun and he needed to stop and leave. (*Id.* ¶¶ 19–20.) After Steven informed Sancinati that he had a gun and that Sancinati needed to stop and leave, Sancinati ceased his efforts to repossess the vehicle and drove away, leaving the vehicle. (*Id.* ¶ 21.)

Although the defendants dispute these two allegations, the Russells allege in their complaint that at no point during Steven's interaction with Sancinati did he remove the handgun from his pocket. (Compl. ¶ 30.) The Russells further allege that Sancinati called the police and falsely accused Steven of pointing a gun at him during the attempted repossession. (*Id.* ¶ 32.)

Approximately thirty minutes after Sancinati left, officers from the Racine Police Department arrived at the Russells' home. (DPFOF ¶ 22 and Pls.' Resp. ¶ 22.) Although the parties do not address all of the specific following facts in either of their proposed findings of fact, the Russells' complaint alleges that the officers handcuffed Steven and placed him in the back of a police car for questioning. (Compl. ¶ 33.) At some point after arriving at the Russell home, the police officers contacted Sancinati and told him that he could come repossess the car while they were present. (*Id.* ¶ 34.) While Steven was detained in the back of the police car and while the officers were present, Sancinati returned to the Russell home and repossessed the vehicle. (*Id.* ¶ 35.)

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), a party can seek summary judgment upon all or any part of a claim or defense asserted. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the

4

ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

The Russells sue AssetsBiz and Sancinati under both the FDCPA and the WCA, and sue all three defendants under the WCA. (Compl. ¶¶ 39–60.) The Russells allege that AssetsBiz and Sancinati violated the FDCPA by repossessing the vehicle in violation of Wisconsin law, specifically, that Sancinati "breached the peace" when he repossessed the vehicle. The Russells' two claims under the WCA similarly stem from Sancinati's alleged breach of the peace.[1]

### 1. FDCPA Claim

The scheduling order in this case allows for dispositive motions to be filed after the completion of discovery. (Docket # 21.) However, AssetsBiz and Sancinati were allowed to file this summary judgment motion prior to the completion of discovery to address a purely legal question, namely, whether repossessors are "debt collectors" under the FDCPA.

---

[1]The Russells also allege in Count Three that the defendants violated Wis. Stat. § 427.104(1)(h) because Santander never sent the Russells a Notice of Right to Cure Default. (Compl. ¶ 55.) The Russells now do not dispute that they were sent such a written notice by Santander. (DPFOF ¶ 11 and Pls.' Resp. ¶ 11.)

AssetsBiz and Sancinati assert that as repossessors, they are not subject to the FDCPA. The FDCPA expressly prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The term "debt collector" generally is defined as excluding repossessors and other enforcers of security interests. 15 U.S.C. § 1692a(6). However, a repossessor may not take or threaten to take nonjudicial action to dispossess a person of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest. *Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (quoting § 1692f(6)(A)). Thus, as they acknowledge in their reply brief (Defs.' Reply Br. at 2, Docket # 39), AssetsBiz and Sancinati *could* fall under the purview of the FDCPA if they fall under the exception presented in § 1692(f)(6).[2]

"Courts presented with the issue of determining whether a repossession agency has violated § 1692f(6) look to the applicable state self-help repossession statute which identifies the circumstances under which an enforcer of a security interest does not have a present right to the collateral at issue." *Gable v. Universal Acceptance Corp. (WI)*, 338 F. Supp. 3d 943, 949 (E.D. Wis. 2018) (internal quotation and citations omitted). Wisconsin law allows that upon an entry of a judgment for replevin in favor of the creditor, the creditor shall have the right to either: (1) have execution issued to require the sheriff of the county where the collateral or leased goods may be to take the same from the debtor and deliver it to the creditor (i.e., a "judicial repossession") or (2) immediately exercise the right to nonjudicial recovery of the collateral or leased goods, subject to Wis. Stat. § 425.206 (i.e., a "nonjudicial

---

[2]The Russells seem to acknowledge that repossessors are generally excluded from the FDCPA by clarifying that to the extent their complaint alleges a violation of 15 U.S.C. § 1692f, the claim is withdrawn. (Pls.' Resp. Br. at 3, n.1, Docket # 38.) The Russells assert that the only claim they are pursuing under the FDCPA is for a violation of 15 U.S.C. § 1692f(6). (*Id.*)

repossession"). Wis. Stat. § 425.205(5). If the creditor chooses to exercise the right to nonjudicial recovery of the collateral, he may not commit a "breach of the peace" while doing so. Wis. Stat. § 425.206(2)(a). Thus, if the creditor breaches the peace, there is no right of possession and the FDCPA is violated. *Bednarz v. Lovald*, No. 15-CV-0458, 2016 WL 6304705, at *2 (E.D. Wis. Oct. 27, 2016).

The issue of whether a repossessor "breached the peace," however, only comes into play if the creditor chooses to exercise the right to nonjudicial recovery of the collateral. The Russells contend that this is exactly what AssetsBiz and Sancinati did—they repossessed the vehicle without having "execution issue[d] to require the sheriff" to take the collateral and deliver it to the creditor. (Pl.'s Br. at 4.) AssetsBiz and Sancinati counter that they engaged in a judicial repossession. (Defs.' Reply Br. at 3–4.) They argue that because "execution" is not defined in Chapter 425, I should look to Black's Law Dictionary which defines "execution" as "A court order directing a sheriff or other officer to enforce a judgment, [usually] by seizing and selling the judgment debtor's property." (*Id.* at 6–7.) They then reason that a judgment of replevin is in fact an "execution" under Wisconsin law. (*Id.* at 7.)

AssetsBiz and Sancinati are incorrect. In *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 508 N.W.2d 449 (Ct. App. 1993), the Wisconsin Court of Appeals considered the issue of "breach of the peace" in the context of both the Uniform Commercial Code and the Wisconsin Consumer Act. It stated as follows:

> Under sec. 9–503 and the WCA, a creditor may repossess collateral if it does not breach the peace in the process. The only added requirement of the WCA is that a creditor must first obtain a judgment of replevin.[3] In either instance,

[3]I note that prior to 2006, self-help repossession of all collateral, including motor vehicles, was not permitted without a replevin judgment in favor of the creditor. After 2006, the statute was modified to allow motors vehicles to be repossessed without a replevin judgment. To repossess without a replevin judgment, certain statutory notice must

> when debtor resistance threatens a breach of the peace, a requisition to the sheriff must be obtained. See sec. 810.03, Stats. When a judgment of replevin has been obtained, as required by the WCA, the court is not burdened with the case all over again, as FMCC suggests. The only extra burden is to draft the necessary documents which enable the sheriff to obtain the collateral. See sec. 815.05(6), Stats.

*Id.* at 805, 508 N.W.2d at 452. Again, the language of *Hollibush* is that after a judgment of replevin is obtained, the creditor must then "draft the necessary documents" (i.e., the "execution") to allow the sheriff to repossess the collateral. This necessarily contemplates that the "execution" and the judgment of replevin are not the same thing. Importantly, *Hollibush* cites to Wis. Stat. § 815.05, which contains instructions on how an "execution" is obtained, which includes referring to the judgment in the execution, again, showing these are not the same documents. Further, the "execution" as described in § 815.05 is specifically directed to the sheriff, unlike the judgment of replevin, which does not direct the sheriff to do anything. Although the replevin judgment states that the plaintiff can either recover the property from the defendant or can use the sheriff to recover the collateral (Affidavit of Christopher Riordan ¶ 5, Ex. 4, Docket # 31-4), this clearly refers to the two options present in Wis. Stat. § 425.205(5). Moreover, this does not mean that the replevin judgment and the "execution" are interchangeable.

As the *Hollibush* court explained, "[r]epossessions are emotional matters," and the "potential for violence exists whether or not a replevin judgment exists." 179 Wis. 2d at 811–12, 508 N.W.2d at 455. This is why once a replevin judgment is obtained, the creditor must either obtain the necessary paperwork (i.e., the execution) to have the sheriff repossess the collateral, or repossess it himself, but without breaching the peace in the process.

---

be given. Wis. Stat. § 425.205(1g)(a). However, since Santander chose to file a replevin action against the Russells and obtained a replevin judgment, *Hollibush* controls.

AssetsBiz and Sancinati do not assert that they obtained an execution from the court, as anticipated by Wis. Stat. § 815.05. Thus, they did not engage in a judicial repossession. Because what AssetsBiz and Sancinati engaged in was a nonjudicial repossession, whether they breached the peace is at issue. Under Wisconsin law, if a creditor repossesses in disregard of the debtor's unequivocal oral protest, the creditor commits a breach of the peace. *Hollibush.*, 179 Wis. 2d at 808, 812, 508 N.W.2d at 453, 455. The underlying theory is that if the debtor protests the repossession, it is better for the repossessor to stop the repossession (and thus stop the potential for violence) and obtain the necessary documents (i.e., the "execution") so that the sheriff can obtain the collateral. *Id.* at 805, 508 N.W.2d at 452.

A creditor cannot avoid a "breach of the peace," however, by simply calling law enforcement for help when the debtor unequivocally objects to the repossession. In other words, the creditor cannot side-step the requirement of first obtaining the "execution" before involving law enforcement in the repossession. *See Gable*, 338 F. Supp. 3d at 950 (quoting *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004) ("[O]fficers may act to diffuse a violent situation but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance.")). For example, in *Gable*, while employees of a repossession company were attempting to repossess the debtor's vehicle, the debtor climbed into his vehicle while it was partially winched onto the flatbed of the repossession agent's truck. *Id.* at 946. The debtor's girlfriend stated that she explicitly told the repossession agents that they did not have a legal right to take the car. *Id.* at 950. The debtor's girlfriend called the police and when the officers arrived, an officer told the debtor that the repossession agents had the right to take possession of the vehicle. *Id.* at 947. The debtor turned over his

key to the repossession agent in a cooperative fashion. *Id.* The court denied the defendants'

motion for summary judgment on the plaintiffs' § 1692f(6) claim. The court found that there

was strong evidence that the debtor and his girlfriend objected to the repossession of the

vehicle. *Id.* at 950. The defendants argued that even if the plaintiffs objected to the

repossession initially, they changed their minds after the police were called and voluntarily

turned over the vehicle's key. *Id.* The court disagreed, finding that the fact the plaintiffs

"acquiesced in the repossession after the police arrived and informed them the repossession

was lawful, however, does not mean that they withdrew their objections to [the defendants']

conduct." *Id.* The court found that even though the police officers were wrong in their

conclusion that the defendants were legally entitled to take the car over the debtor's

objection, the plaintiffs were "obligated to comply with the police officer's directions

regardless of whether they wanted to do so in order to avoid arrest." *Id.* Even so, the court

concluded that the plaintiffs' compliance did "not relieve [the defendants] of liability for

violating the FDCPA." *Id.*

The *Gable* court distinguished its situation from that in *Bednarz*, where, during a

repossession attempt of a vehicle, the debtor exited his residence with a firearm. 2016 WL

6304705, at *3. The debtor told the repossession agent to leave and never come back. *Id.*

The police were called and officers handcuffed the debtor and questioned him about the

firearm and repossession attempt. *Id.* at *4. The court denied both parties' summary

judgment motions on the plaintiff's FDCPA claim because there was a factual dispute over

whether the police were called to investigate the firearm incident and the plaintiff then

changed his mind about the repossession, or whether they were called to assist in the

repossession and the debtor turned over his keys to the vehicle because of the police

presence. *Id.* at *6. The *Gable* court found that "[i]mplicit in the court's conclusion in *Bednarz* is the holding that if the police presence caused [the debtor] to turn his keys over to the repossessor, a breach of the peace occurred." 338 F. Supp. 3d at 951.

Thus, AssetsBiz and Sancinati's summary judgment motion is premature. The parties seem to agree that Steven Russell told Sancinati that he had a firearm and unequivocally told Sancinati to leave. What is unclear, however, is how the Racine Police Department became involved. Were the police there to investigate Sancinati's allegation that Steven Russell threatened him with a gun, or were the police there to effectively assist in the repossession? Without the development of more facts, it is unclear, at this stage, whether the situation in this case is closer to *Gable* or *Bednarz*. In other words, it is unclear at this stage whether there was a breach of the peace implicating FDCPA liability. For these reasons, AssetsBiz and Sancinati's motion for summary judgment as to the FDCPA claim is denied.

### 2. *WCA Claims*

The Russells also sue AssetsBiz and Sancinati under Wis. Stat. §§ 425.206(2), 427.104(1)(h), and 427.104(1)(j). AssetsBiz and Sancinati argue that the WCA claims must be dismissed because the Russells entered into the retail installment contract in Illinois, and the WCA only applies to consumer transactions made in Wisconsin. (Defs.' Br. at 8–9.) The Russells do not dispute that the contract was executed in Illinois. (DPFOF ¶ 3 and Pls.' Resp. ¶ 3.) They assert, however, that the WCA still applies to their claims, principally because of the replevin action filed in Wisconsin and the fact that the parties subsequently entered into a loan modification agreement in Wisconsin. (Pls.' Resp. Br. at 5–6.)

While it is true that the WCA applies to consumer transactions made in Wisconsin, like most laws, it is not without exceptions. The Wisconsin Court of Appeals' decision in *Credit Acceptance Corp. v. Kong*, 2012 WI App 98, 344 Wis. 2d 259, 822 N.W.2d 506 is instructive. In *Kong*, the debtors purchased a vehicle from a dealership in Minnesota. *Id.* ¶ 2. After the debtors began falling behind and eventually failed to make payments, the vehicle was repossessed in Wisconsin. *Id.* ¶¶ 3–5. The creditor began a deficiency action to obtain a money judgment for the balance of the purchase price. *Id.* ¶ 5. The debtors counterclaimed, seeking damages for violations of the WCA. *Id.* The creditor argued that the WCA did not apply. *Id.* ¶ 9. The court of appeals acknowledged that the WCA only applies to consumer transactions made in Wisconsin and there was no dispute that the transaction was not made in Wisconsin. *Id.* ¶ 10. The court of appeals found, however, that "the WCA may come to govern a transaction even if the transaction is not made in this state. For example, certain portions of the WCA apply to actions or other proceedings 'brought in this state to enforce rights arising from consumer transactions . . . wherever made.'" *Id.* ¶ 11 (quoting Wis. Stat. § 421.201(5)). The court of appeals explained: "In other words, a creditor must comply with certain portions of the WCA (namely, subchapters I and II of Wis. Stat. ch. 425) if it wishes to bring suit in Wisconsin. Thus, when [the creditor] filed the present action, it essentially consented to be governed by subchapters I and II of ch. 425." *Id.*

Similarly, Santander brought a replevin action against the Russells in Wisconsin. (DPFOF ¶ 1 and Pls.' Resp. ¶ 1.) Thus, when Santander brought the replevin action in Wisconsin to enforce its rights arising from the Illinois consumer transaction, as in *Kong*, Santander consented to be governed by subchapters I and II of Chapter 425 of the WCA. AssetsBiz and Sancinati contend, without citation to any authority, that because AssetsBiz

and Sancinati were not parties to the replevin action, they did not consent to be governed by the WCA. (Defs.' Reply Br. at 10.) While AssetsBiz and Sancinati were acting on Santander's behalf, it is unclear whether the consent principal discussed by *Kong* applies to the creditor's agents. Also, while *Kong* states that creditors consent to be governed by subchapters I and II of Chapter 425, it does not specifically speak to whether they consent to be governed by Chapter 427 (Count III of the complaint). Because neither party addressed these issues, and because these are solely legal matters, I invite the parties to file supplemental briefs addressing whether the WCA applies to the transaction at issue in this case.

## CONCLUSION

AssetsBiz and Sancinati move for summary judgment as to the Russells' FDCPA and WCA claims against them. Because the factual record is not sufficiently developed as to the FDCPA claim, the defendants' motion is denied. However, as to the defendants' motion on the Russells' WCA claims, I will reserve ruling on the motion pending the completion of supplemental briefing.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 29) is **DENIED** as to Count One of the complaint. I will reserve ruling on the defendants' motion for summary judgment as to Counts Two and Three of the complaint until further briefing is completed. Any supplemental briefs must be filed no later than **twenty-one (21) days** from the date of this order.

Dated at Milwaukee, Wisconsin this 20th day of September, 2019.

BY THE COURT:

_s/Nancy Joseph_____
NANCY JOSEPH
United States Magistrate Judge