# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**STEVEN J. RUSSELL and**
**NANCY J. RUSSELL,**

    Plaintiffs,

    v.                                         Case No. 19-CV-119

**SANTANDER CONSUMER USA, INC.,**
**ASSETSBIZ-WISCONSIN, LLC, and**
**MICHAEL A. SANCINATI,**

    Defendants.

## DECISION AND ORDER ON PLAINTIFFS' AND DEFENDANTS' CROSS MOTIONS FOR SUMMARY JUDGMENT

Steven and Nancy Russell bought a 2013 Dodge Journey from a dealership in Illinois. Santander Consumer USA, Inc. purchased the Russells' retail installment contract for the vehicle. After the Russells fell behind on their payments, Santander obtained a judgment of replevin and enlisted AssetsBiz-Wisconsin, LLC, and its repossession agent, Michael Sancinati, to repossess the Russells' vehicle. The Russells now sue AssetsBiz and Sancinati for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 and sue all three defendants for violations of the Wisconsin Consumer Act ("WCA"), Wis. Stat. 421 *et seq.*, stemming from the repossession.

AssetsBiz and Sancinati move for summary judgment as to the FDCPA and WCA claims against them. The Russells also move for summary judgment as to their claims against AssetsBiz, Sancinati, and Santander. For the reasons discussed below, the defendants' motion is denied and the Russells' motion is granted.

# FACTS

On March 14, 2017, Santander commenced a lawsuit against the Russells in the Racine County Circuit Court to recover possession of their 2013 Dodge Journey. (Defs' Proposed Findings of Fact ("DPFOF") ¶ 1 (Docket # 66) and Pls' Resp. to DPFOF ("Pls' Resp.") ¶ 1 (Docket # 85).) The Racine County Circuit Court entered a judgment of replevin on April 20, 2017. (*Id.* ¶ 7.)

At approximately 10:45 a.m. on October 14, 2018, Steven Russell was inside his home in Racine when he heard his vehicle's security alarm go off. (*Id.* ¶ 12.) Russell's friend, Eric Peckman, told Russell that someone was taking his vehicle. (*Id.*) Russell testified that he looked out of his window and saw that the hood of his Dodge Journey was up. (Declaration of Christopher P. Riordan ("Riordan Decl.") ¶ 5, Exh. 4, Deposition of Steven Russell, Jr. ("Russell Dep.") at 33, Docket # 67-4.) Because he did not know who was by his vehicle or what he was getting into, Russell testified that he took his gun out of his safe for his own protection. (*Id.*) Russell went out of the door of his house and stood to the back of the vehicle for nine minutes while Sancinati attempted to disconnect the Journey's battery. (*Id.*) Russell did not make any moves towards the vehicle, he simply sat and waited for Sancinati to come to the back of the vehicle. (*Id.* at 33–34.)

Once Sancinati came to the back of the vehicle, Russell testified that he asked Sancinati what he was doing. (*Id.* at 34.) Sancinati responded that he was there to repossess the vehicle and attempted to show Russell some documents. (*Id.*) Russell testified that he told Sancinati that he did not care what documents Sancinati allegedly had, Sancinati was to "put the vehicle down and get the hell off [his] property." (*Id.*) Russell testified that while he told Sancinati that he had a loaded gun (*id.* at 53), he never removed the firearm from his

2

pocket (*id.* at 55). After Russell told Sancinati that he had a gun and that Sancinati needed to leave, Sancinati ceased his efforts to repossess the vehicle and drove away, leaving the vehicle in place. (DPFOF ¶ 16 and Pls' Resp. ¶ 16.)

Sancinati, in contrast, testified that after Russell exited his residence, he told Sancinati that he had a loaded .45 in his hand and pointed the gun, point blank, at Sancinati's chest. (Riordan Decl. ¶ 4, Exh. 3, Deposition of Michael Sancinati ("Sancinati Dep.") at 12, Docket # 67-3.) Sancinati testified that while the gun was pointed at him, he attempted to show Russell his paperwork, but Russell "wouldn't have it." (*Id.*) Sancinati testified that Russell told Sancinati to leave his property, and Sancinati complied. (*Id.*)

Sancinati testified that he parked down at the end of the street and called the Racine Police Department because he feared for his safety. (*Id.*) Sancinati testified that he told the police that he was doing a repossession and the vehicle owner came out and threatened him with a gun. (*Id.* at 18.) Russell testified that approximately thirty minutes after Sancinati left, officers from the Racine Police Department arrived at his door. (Russell Dep. at 65.) The officers asked Russell to step outside, which he did. (*Id.* at 68.) Russell was searched and asked about his firearm. (*Id.*) Russell informed the officers that his gun was back in the safe in his bedroom and that he was unarmed. (*Id.*) Russell testified that the officers placed him in handcuffs and walked him to the back of the squad car. (*Id.*) Russell testified that he was in the squad car for twenty-two minutes. (*Id.* at 73.) By the time he was released, the Dodge Journey was gone. (*Id.* at 74.) Sancinati testified that while Russell was handcuffed and in the back of the squad car, the officers told him that "if [he] wanted to go get the vehicle, [he] could go get it." (Sancinati Dep. at 20.)

3

## SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), a party can seek summary judgment upon all or any part of a claim or defense asserted. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

4

## ANALYSIS

The Russells sue AssetsBiz and Sancinati under both the FDCPA and the WCA, and sue all three defendants under the WCA. (Compl. ¶¶ 39–60.) The Russells allege that AssetsBiz and Sancinati violated the FDCPA by repossessing the vehicle in violation of Wisconsin law, specifically, that Sancinati "breached the peace" when he repossessed the vehicle. The Russells' two claims under the WCA similarly stem from Sancinati's alleged breach of the peace. The Russells further argue that Santander is liable under the WCA for AssetsBiz and Sancinati's wrongful actions.

### 1. *Breach of the Peace (FDCPA and WCA Claims Against AssetsBiz and Sancinati)*

The Russells contend that AssetsBiz and Sancinati breached the peace, as a matter of law, when Sancinati repossessed the Russells' Dodge Journey, thus violating the FDCPA, Wis. Stat. § 425.206(1), and Wis. Stat. §§ 427.104(1)(h) and (1)(j).[1] The FDCPA expressly prohibits a "debt collector" from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The term "debt collector" generally is defined as excluding repossessors and other enforcers of security interests. 15 U.S.C. § 1692a(6). However, a repossessor may not take or threaten to take nonjudicial action to dispossess a person of property if there is no present right to possession of the property claimed as collateral through an enforceable security interest. *Nadalin v. Auto. Recovery Bureau, Inc.*, 169 F.3d 1084, 1085 (7th Cir. 1999) (quoting § 1692f(6)(A)). "Courts presented with the issue of determining whether a repossession agency has violated § 1692f(6) look to the applicable state self-help repossession statute which identifies the circumstances under

---

[1] While the Russells originally sued the defendants under Wis. Stat. § 427.104(1)(h) on the grounds that Santander never sent the Russells a Notice of Right to Cure Default, the Russells now do not dispute that they were sent such a written notice by Santander. (Docket # 42 at 5 n.1.) Thus, the Russells concede that the defendants are not liable under that theory.

5

which an enforcer of a security interest does not have a present right to the collateral at issue." *Gable v. Universal Acceptance Corp. (WI)*, 338 F. Supp. 3d 943, 949 (E.D. Wis. 2018) (internal quotation and citations omitted). Wisconsin law allows that upon an entry of a judgment for replevin in favor of the creditor, the creditor shall have the right to either: (1) have execution issued to require the sheriff of the county where the collateral or leased goods may be to take the same from the debtor and deliver it to the creditor (i.e., a "judicial repossession") or (2) immediately exercise the right to nonjudicial recovery of the collateral or leased goods, subject to Wis. Stat. § 425.206 (i.e., a "nonjudicial repossession"). Wis. Stat. § 425.205(5). If the creditor chooses to exercise the right to nonjudicial recovery of the collateral, he may not commit a "breach of the peace" while doing so. Wis. Stat. § 425.206(2)(a). Thus, if the creditor breaches the peace, there is no right of possession and the FDCPA is violated. *Bednarz v. Lovald*, No. 15-CV-0458, 2016 WL 6304705, at *2 (E.D. Wis. Oct. 27, 2016).

The issue of whether a repossessor "breached the peace," however, only comes into play if the creditor chooses to exercise the right to nonjudicial recovery of the collateral. I have already determined that AssetsBiz and Sancinati engaged in a nonjudicial recovery of the collateral. (Docket # 42 at 9.) Thus, the issue before me is whether the defendants breached the peace when repossessing the Russells' vehicle.

Under Wisconsin law, if a creditor repossesses in disregard of the debtor's unequivocal oral protest, the creditor commits a breach of the peace. *Hollibush v. Ford Motor Credit Co.*, 179 Wis. 2d 799, 808, 508 N.W.2d 449, 455 (Ct. App. 1993). The rationale behind this is that repossessions are "emotional matters" and a "verbal objection to a repossession is the precursor to violence, and [ ] it should not be necessary for a debtor to

6

resort to violence to provide the breach of the peace necessary to defeat a self-help repossession." *Id.* at 811–12, 508 N.W.2d at 455. A creditor cannot avoid a "breach of the peace," however, by simply calling law enforcement for help when the debtor unequivocally objects to the repossession. In other words, the creditor cannot side-step the requirement of first obtaining the "execution" before involving law enforcement in the repossession. *See Gable*, 338 F. Supp. 3d at 950 (quoting *Marcus v. McCollum*, 394 F.3d 813, 819 (10th Cir. 2004) ("[O]fficers may act to diffuse a violent situation but may not aid the repossessor in such a way that the repossession would not have occurred but for their assistance.")).

The Russells' situation is unique. The parties do not dispute that Sancinati attempted to repossess the Dodge Journey, that Steven Russell unequivocally objected to the repossession and told Sancinati that he had a firearm (although the parties dispute whether Russell actually pointed the firearm at Sancinati's chest), and that Sancinati left. (DPFOF ¶¶ 14–16, 22–23, 26–27, 31–32 and Pls' Resp. ¶¶ 14–16, 22–23, 26–27, 31–32.) AssetsBiz and Sancinati argue that this was one repossession attempt—and clearly no breach of the peace occurred under Wisconsin law because Sancinati left when Russell objected. The situation did not end there, however. Sancinati then called the police, who arrived within minutes (according to the Russells) or within thirty minutes (according to the defendants). (DPFOF ¶ 17 and Pls' Resp. to DPFOF ¶ 17.) Either way, AssetsBiz and Sancinati argue that this commenced a second, independent, repossession attempt—this time ending with Steven Russell's step-daughter, Morgan Spring (who frequently drove the Dodge Journey) (Riordan Decl. ¶ 6, Exh. 5, Deposition of Morgan Spring ("Spring Dep.") at 28–29, Docket # 67-5), allowing the repossession to take place while Steven Russell was detained in the back of a

7

squad car for questioning regarding allegedly pointing a gun at Sancinati's chest (Defs' Br. at 12–14, Docket # 65).

AssetsBiz and Sancinati argue that even though Russell may have unequivocally objected to the first repossession attempt, this does not mean that Sancinati breached the peace during his "second and successful" repossession attempt. (Defs' Reply Br. at 6, Docket # 81.) AssetsBiz and Sancinati argue that if a debtor unequivocally objects to one repossession attempt, this does not mean that the creditor cannot keep attempting self-help repossession. They argue that Wisconsin law does not require a creditor to pursue judicial remedies after a debtor's objection. (*Id.*)

While Wisconsin law does not specifically address this issue, what *Hollibush* does teach, however, is that "no means no" and self-help repossession in the face of a debtor's contemporaneous objection constitutes a breach of the peace. 179 Wis. 2d at 810–812, 508 N.W.2d at 454–55. In other words, if the debtor says "no," the self-help repossession must cease. Wisconsin law is not crystal clear on what must take place after the debtor's objection. But I do not agree with AssetsBiz and Sancinati that repossession efforts can recommence, as occurred in this case, as soon as thirty minutes after the debtor objects to the repossession. While *Hollibush* does not specifically address what must occur after a debtor objects to a self-help repossession, the court does favorably cite both case law and legal commentary that states if a debtor protests the repossession, the secured party should pursue its remedies in court. *Id.* at 809–11, 508 N.W.2d at 454 (citing 9 W. Hawkland, Uniform Commercial Code Series § 9–503:03 (1991) and *Census Fed. Credit Union v. Wann*, 403 N.E.2d 348 (Ind. Ct. App. 1980)); *see also* Hawkland at 756 ("[I]f the repossession is verbally or otherwise contested at the actual time of and in the immediate vicinity of the

attempted repossession by the defaulting party or other person in control of the chattel, the secured party must desist and pursue his remedy in court."); *Census Fed. Credit Union*, 403 N.E.2d at 351–52 ("Generally, however, if the debtor protests the secured party's repossession, or perhaps even if a third party, such as a spouse or child, protests, a breach of peace will be imminent, and self-help repossession should no longer be an alternative for the secured party.").

The defendants cite a case from the Kansas Court of Appeals, *Wade v. Ford Motor Credit Co.*, 668 P.2d 183 (1983) in support of the proposition that a debtor's refusal to consent after demand for possession does not, in and of itself, require resort to legal channels for recovery. But in *Wade*, the secured party waited one month between two separate repossession attempts. 668 P.2d at 189. The court noted that "the potential for violence was substantially reduced by the passage of this time." *Id.* Even assuming AssetsBiz and Sancinati are correct that Wisconsin law does not require a secured party to pursue judicial remedies after the debtor objects to a self-help repossession, it is entirely unclear how the passage of (at most) thirty minutes is long enough to calm emotions and reduce the threat of violence.

While AssetsBiz and Sancinati also argue alternate theories endorsed by other states, such as that Russell's objection was untimely because Sancinati had already backed his tow truck up to the Dodge Journey, hooked the vehicle onto the truck, and lifted the vehicle's rear wheels off the ground before Russell objected (Defs' Br. at 10–12, Docket # 65), I need not look to other jurisdictions for support when Wisconsin law answers the question. By citing favorably, for example, the Indiana Court of Appeals' decision in *Census Fed. Credit Union*, the Wisconsin courts clearly take a stricter approach to self-help repossession.

9

Further, given that the WCA expressly states that it should be liberally construed and applied to promote the underlying purposes and policies of the statute—one stated purpose of which is consumer protection—*Brunton v. Nuvell Credit Corp.*, 2010 WI 50, ¶ 26, 325 Wis. 2d 135, 150, 785 N.W.2d 302, 308–09, I find that the undisputed material facts demonstrate that the Russells are entitled to judgment as a matter of law as to their claim that AssetsBiz and Sancinati violated 15 U.S.C. § 1692f(6) when they repossessed the Dodge Journey.

The Russells further argue that the illegal repossession violated the WCA, specifically Wis. Stat. § 425.206(2)(a) and Wis. Stat. §§ 427.104(1)(h) and (1)(j). I have already determined that AssetsBiz and Santander fall under the territorial scope of the WCA. (Docket # 45.) Section 425.206(2)(a) provides that "[i]n taking possession of collateral or leased goods, no merchant may do any of the following: (a) Commit a breach of the peace." Given my determination above, I also find that AssetsBiz and Sancinati violated Wis. Stat. § 425.206(2)(a) as a matter of law. Sections 427.104(1)(h) and (1)(j) prohibit a debt collector from conduct which can reasonably be expected to threaten or harass the consumer or to claim, attempt, or threaten to enforce a right with knowledge or reason to know that the right does not exist. Again, if a creditor breaches the peace, there is no right of possession. *See Bednarz*, 2016 WL 6304705, at *2. Further, I find that a breach of the peace constitutes conduct that can reasonably be expected to threaten or harass the consumer. Thus, I find that AssetsBiz and Sancinati also violated Wis. Stat. §§ 427.104(1)(h) and (1)(j) as a matter of law. *See Gable*, 338 F. Supp. 3d at 956 (finding that debt collectors could be liable to plaintiff under Wis. Stat. § 427.104 if plaintiff could establish a breach of the peace).

The Russells also move for summary judgment as to AssetsBiz and Sancinati's thirteen affirmative defenses. (Docket # 12 at 10–11.) Although the Russells move for summary judgment, it is ultimately AssetsBiz and Sancinati's burden to prove its affirmative defenses. *See James River Ins. Co. v. Kemper Cas. Ins. Co.*, 585 F.3d 382, 385 (7th Cir. 2009) ("It is sensible to place the burden of proof of an affirmative defense on the defendant, rather than making the plaintiff prove a negative."). "When the moving party does not have the burden of proof at trial, the moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case." *Roeder v. ChemRex Inc.*, 863 F. Supp. 817, 821 (E.D. Wis. 1994). AssetsBiz and Sancinati make no arguments as to the merits of any of their asserted affirmative defenses. (Defs.' Br. in Opp. at 27–29, Docket # 79.) Because AssetsBiz and Sancinati failed to meet their burden of proof, I will grant summary judgment in the Russells' favor as to the defendants' affirmative defenses.

2. *Santander's Liability Under the WCA*

The Russells also sue their creditor, Santander, under Wis. Stat. § 425.206(2)(a) and Wis. Stat. §§ 427.104(1)(h) and (1)(j) for the illegal repossession. The Russells move for summary judgment on their WCA claims against Santander and as to Santander's affirmative defenses. (Docket # 16 at 10.) The Russells argue that Santander cannot avoid liability under the WCA by acting through its repossession agents. (Pls' Br. in Supp. at 10–13, Docket # 57.) It is undisputed that Santander hired a non-party, P.K. Willis, to repossess the Russells' vehicle. (Pls' Proposed Additional Facts ("PPAF") ¶ 149, Docket # 74 and Def.'s Resp. to PPAF ¶ 6, Docket # 72.) P.K. Willis in turn hired AssetsBiz to conduct the physical repossession of the Russells' vehicle. (*Id.* ¶ 149 and Def.'s Resp. to

11

PPAF ¶ 12.) Thus, Santander argues that it is not liable for the actions of AssetsBiz and Sancinati because there was no contractual relationship between Santander and AssetsBiz and because there is no case law to support that a creditor is vicariously liable for the actions of a third-party repossession company. (Def.'s Br. at 2, Docket # 71.)

The court in *Gable* addressed a similar issue. In *Gable*, the creditor, UAC, had a contract with a repossession company, RPI. The parties' contract expressly classified RPI as an independent contractor and not an agent of UAC. 338 F. Supp. 3d at 946. RPI's agent, Chase, physically repossessed the plaintiffs' vehicle. *Id.* at 948, 954. The plaintiffs sued UAC, RPI, and Chase under Wis. Stat. § 425.206(2)(a) and §§ 427.104(1)(g) and (j). UAC argued that it could not be held liable under the WCA because RPI was an independent contractor under its contract with UAC and not its agent, and because Chase was also not UAC's agent but RPI's agent. *Id.* at 954. Santander is in a similar position as UAC—both were two parties removed from the act of repossession. In *Gable*, the creditor (UAC) hired RPI to repossess Gable's vehicle, and RPI hired Chase to do the actual repossession. Similarly, in this case, Santander hired P.K. Willis to repossess the vehicle, who in turn hired AssetsBiz to conduct the actual repossession. Santander presumably does have a contract with P.K. Willis and P.K. Willis presumably has a contract with AssetsBiz. But having an actual contract does not matter. The *Gable* court cited Wis. Stat. § 425.206(2)(a), which states that "[i]n taking possession of collateral or leased goods, no merchant may . . . [c]ommit a breach of the peace." The court noted that the WCA defines merchant as:

> a person who regularly advertises, distributes, offers, supplies or deals in real or personal property, services, money or credit in a manner which directly or indirectly results in or is intended or designed to result in, lead to or induce a consumer transaction. The term includes but is not limited to a seller, lessor, manufacturer, creditor, arranger of credit and any assignee of or successor to

12

such person. The term also includes a person who by his or her occupation holds himself or herself out as having knowledge or skill peculiar to such practices or to whom such knowledge or skill may be attributed by his or her employment as an agent, broker or other intermediary.

*Id.* (quoting Wis. Stat. § 421.301(25)). The court found that "[r]egardless of the language UAC included in its contract with RPI, it was UAC that directed RPI to repossess Gable's car, and it is UAC that falls within the definition of merchant contained in the WCA." *Id.* The court continued: "It was UAC's authority to repossess Gable's car that RPI was exercising. That UAC chose to authorize RPI to exercise its right under Wisconsin law to take possession of its collateral extra-judicially does not mean it can avoid liability for actions taken on its behalf and at its request." *Id.* at 955.

The only difference between *Gable* and this case is that the Russells did not also sue P.K. Willis. It is irrelevant that Santander did not contract with AssetsBiz. As in *Gable*, P.K. Willis repossessed the Russells' vehicle on Santander's authority, and P.K. Willis utilized AssetsBiz to do so. Thus, Santander cannot insulate itself from liability under Wisconsin law by utilizing third-parties to exercise its right to repossession. P.K. Willis and AssetsBiz were taking action at Santander's request. Like *Gable*, the repossession agent (RPI/P.K. Willis) used its agent (Chase/AssetsBiz) to repossess the plaintiff's vehicle. The court found that *despite* the creditor's (UAC) contractual relationship with RPI expressly stating that RPI was an independent contractor and *not* an agent of UAC, and despite the fact that the repossession agent (RPI) used its own agent (Chase) to repossess the vehicle, the court still found that UAC could be liable to the plaintiff under the WCA. I agree with the *Gable* court's reasoning. The "merchant" has an independent duty under the WCA to not breach the peace while taking possession of collateral. It would defeat the purpose of the statute if a

13

"merchant" could escape liability under the WCA by using a third-party to take possession of the collateral. Thus, Santander is liable for the breach of the peace under the WCA.

The Russells similarly moved for summary judgment as to Santander's twelve affirmative defenses. (Pls' Br. in Supp at 17–24.) Santander fails to address the Russells' arguments as to the affirmative defenses. (*See* Docket # 71.) Santander has failed to meet its burden of proof as to its affirmative defenses; thus, I will grant summary judgment in the Russells' favor as to Santander's affirmative defenses.

## CONCLUSION

I find that AssetsBiz, Sancinati, and Santander are liable to the Russells for damages. The Russells reserved the issue of damages for trial. (Pl.'s Br. in Supp. at 16.) The clerk's office will contact the parties to set a telephonic status conference to schedule a trial on damages.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiffs' motion for summary judgment (Docket # 63) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket # 64) is **DENIED**.

The clerk's office will contact the parties to set a telephonic status conference to schedule a trial on damages.

Dated at Milwaukee, Wisconsin this 9th day of June, 2020.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge